# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**LOUIS T. CORDOVA,**

    **Plaintiff,**

**v.**                                                    **No. 16-CV-1144-JAP-JHR**

**STATE OF NEW MEXICO,**
**University of New Mexico Hospital,**
**EDUARDO LOPEZ, in his individual**
**capacity, CAROL HILTON, in her**
**individual capacity, and DEINNA DURES,**
**in her individual capacity,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Louis Cordova brings claims arising out of the termination of his employment against Plaintiff's former employer, State of New Mexico governmental entity the University of New Mexico Hospital (UNMH), along with Plaintiff's former supervisors, the individual UNMH employees Eduardo Lopez, Carol Hilton, and Deinyna Duenas, improperly identified as "Deinna Dures." (collectively, Defendants).[1] Defendants have moved to dismiss all counts of the Complaint. The Motion has been fully briefed.[2] The Court will grant the Motion insofar as

---

[1] *See* COMPLAINT FOR DAMAGES FROM FMLA RETALIATION, FMLA INTERFERENCE, WRONGFUL TERMINATION, 42 U.S.C. § 1983 CONSPIRACY AND RIGHT TO CONTINUED EMPLOYMENT, AND BREACH OF AN IMPLIED CONTRACT OF EMPLOYMENT (Doc. No. 1) (Complaint); STATE OF NEW MEXICO & UNIVERSITY OF NEW MEXICO HOSPITAL'S ANSWER TO COMPLAINT FOR DAMAGES FROM FMLA RETALIATION, FMLA INTERFERENCE, WRONGFUL TERMINATION, 42 U.S.C. § 1983 CONSPIRACY AND RIGHT TO CONTINUED EMPLOYMENT, AND BREACH OF IMPLIED CONTRACT OF EMPLOYMENT (Doc. No. 5) (Answer).

[2] *See* DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF (Doc. No. 29) (Motion); PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT (Doc. No. 40) (Response); DEFENDANTS' REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT (Doc. No. 44) (Reply); PLAINTIFF'S SURREPLY TO DEFENDANTS' REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT (Doc. No. 48) (Surreply).

Plaintiff agrees to the dismissal of certain claims, but will deny the Motion as to the remaining claims.

## I.    BACKGROUND[3]

Plaintiff suffers from post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), and depression. Compl. ¶ 12. Plaintiff was diagnosed when young, and he has received treatment for a number of years. *Id.* He has been in therapy and periodically has taken psychiatric medications for these conditions. *Id.* From 2007 through 2016, Plaintiff continuously took medication for his psychiatric diagnoses. Compl. ¶ 13.

Plaintiff was employed by UNMH from October 30, 2007, until his employment was terminated on March 23, 2016. Compl. ¶¶ 14–15. During this time, Plaintiff occasionally experienced increased symptoms due to his psychiatric conditions, but because he was able to predict when these episodes would occur he was able to continue working with the aid of his medications. Compl. ¶ 18. He performed his job duties satisfactorily during this time. Compl. ¶ 16.

However, Plaintiff's symptoms became more frequent and intense in the beginning of 2016, and his medical providers recommended that Plaintiff begin structured therapy and more consistent treatment. Compl. ¶ 19. In February 2016 Plaintiff began receiving treatment and therapy through Outcomes, a UNMH-sponsored health care program. Compl. ¶ 20. Outcomes recognized that Plaintiff's psychiatric condition required more frequent therapy sessions and work accommodations for his deteriorating mental health. *Id.* Plaintiff submitted paperwork to

---

[3] Facts are drawn from allegations in the Complaint, as they must be in deciding a motion to dismiss. *See Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) ("At the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." (internal quotation marks omitted)).

UNMH under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, et seq., for this purpose. Compl. ¶ 21.

On or about March 7, 2016, Plaintiff experienced an episode of severe anxiety that caused him to take leave for ten days on his physician's recommendation. Compl. ¶ 22. On March 17, 2016, Plaintiff's Outcomes health care provider Daniel Crowder signed off on an FMLA Certification of Health Care Provider, noting that (1) the onset of Plaintiff's serious health condition was February 26, 2016; (2) the estimated duration of the condition was one year; (3) the recommendation was weekly to biweekly therapy for six months to one year; (4) Plaintiff suffered from decreased attention and focus leading to lowered productivity; (5) Plaintiff suffered from PTSD; (6) Plaintiff's condition would periodically cause intense symptoms; (7) these episodes of intensity could occur 1–2 times per day, would cause Plaintiff to be ineffective at work, and would periodically prevent Plaintiff from performing his work duties in such a manner as to require him to be absent from work. Compl. ¶ 23.

On March 18, 2016, Plaintiff's first day back at work from leave, Plaintiff delivered this Certification to his supervisor, Defendant Lopez, along with a signed FMLA Notice of Eligibility that was dated that same day. Compl. ¶ 24. Lopez filled out UNMH's Notice of Eligibility that day and noted that Plaintiff had submitted his medical certification, but marked both the "yes" and the "no" boxes as to whether a workplace accommodation was required despite the provider's statement in the certification that Plaintiff's condition would periodically require Plaintiff to be absent from work. Compl. ¶¶ 25–26.

On March 23, 2016, Plaintiff was at work when he experienced increased symptoms including severe anxiety. Compl. ¶ 27. Plaintiff approached Lopez with concerns about his condition and requested that he be allowed to leave work. *Id.* Lopez replied that taking leave

should not be a problem since it was FMLA-related, but stated that he would get clarification before responding to the leave request. *Id.* Plaintiff continued to work for approximately 30 more minutes, then met again with Lopez. Compl. ¶ 28. At this time Lopez informed Plaintiff that UNMH could not accommodate Plaintiff's request because several other employees were out of the office. *Id.*

Plaintiff returned to work although the intensity of his symptoms had not subsided. Compl. ¶ 29. Even in this diminished condition, Plaintiff met his production requirements. *Id.* Nevertheless, Lopez called Plaintiff into his office a few hours later and questioned Plaintiff about his allegedly low productivity that day. *Id.* In response, Plaintiff told Lopez that he did not feel well and asked again that he be allowed to leave work for the day. Compl. ¶ 30. Lopez became angry with Plaintiff and began to accuse Plaintiff of not doing his job. *Id.* This confrontation exacerbated Plaintiff's symptoms and Plaintiff experienced a panic attack. *Id.* Plaintiff began to suffer hot flashes, a startle response, and uncontrollable irritability. Compl. ¶ 31. Plaintiff warned Lopez that he was experiencing the symptoms of a panic attack, but Lopez continued to accuse Plaintiff of poor job performance. Compl. ¶¶ 30, 32. Plaintiff was overcome by anxiety and rushed out of Lopez's office, leaving behind his badge and personal belongings. Compl. ¶ 33.

As Plaintiff left, he called his girlfriend Danielle Telles and told her he was experiencing severe symptoms and needed immediate medical help. Compl. ¶ 34. Plaintiff contacted his providers and requested treatment, but he could not get an appointment until the next morning so he went to the UNMH Mental Health Urgent Care Clinic where he was seen and treated. Compl. ¶ 35.

Telles called Lopez to advise him that Plaintiff had sought treatment for his March 23 panic attack. *Id.* Telles followed up on March 24, 2016, with further calls to Plaintiff's supervisors. Compl. ¶ 36. In accordance with UNMH policy, Telles called Defendant Duenas at least two hours before Plaintiff was scheduled to work on March 24, 2016, and left a message informing Duenas that Plaintiff was receiving medical treatment for his symptoms from the previous day. *Id.* Telles did not receive a return call from either Lopez or Duenas. Compl. ¶ 37.

Plaintiff was released from UNMH Mental Health on March 24, 2016, but was given a medical note stating that he could not return to work before March 28, 2016. Compl. ¶ 38. Since she had not received any response to her earlier calls, Telles left a message with the secretary of the department where Plaintiff worked asking Plaintiff's supervisors to call Telles as soon as possible so that Telles could update them on Plaintiff's prognosis and his expected absence from work until March 28, 2016. Compl. ¶ 39. But Plaintiff's supervisors still did not respond to the message. Compl. ¶ 40.

Finally, on March 28, 2016, at approximately 4:00 p.m. Telles received a phone call from Defendant Hilton, who was the department manager and Lopez' supervisor. Compl. ¶ 41. Hilton informed Telles that she would not discuss any issue related to Plaintiff with Telles. *Id.*

Soon after, Plaintiff received a letter from UNMH dated March 23, 2016, and advising that Plaintiff's employment with UNMH had ended due to his alleged voluntary resignation on March 23, 2016. Compl. ¶ 42. The letter was from Hilton, and noted that Plaintiff had requested FMLA leave but stated that the request was denied because Plaintiff's FMLA leave had not yet been approved. Compl. ¶ 43. Plaintiff did not resign from his position with UNMH. *Id.* Plaintiff characterizes the letter as "a fabrication of Lopez and Hilton to justify an unlawful termination." *Id.*

During Plaintiff's unemployment appeal hearing, UNMH and Hilton admitted that (1) they knew of Telles' telephone calls to UNMH regarding Plaintiff; (2) they intentionally decided not to return Telles' calls; (3) they knew that Plaintiff had requested leave on March 23, 2016, for a condition related to the contents of his FMLA paperwork; and (4) if they had known of the severity of Plaintiff's medical condition on March 23, 2016, Plaintiff would not have been separated from his employment. Compl. ¶ 44.

Based on these circumstances, Plaintiff filed suit against all Defendants for FMLA interference (Count I), FMLA retaliation (Counts II and III), violation of due process (Count IV), breach of implied contract (Count V), retaliatory discharge (Count VI), and wrongful termination (Count VII).

## II.    LEGAL STANDARD

Plaintiff brings his claims under § 2615(a) of the FMLA, 42 U.S.C. § 1983, and New Mexico common law. Compl. ¶ 1. The Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction of Plaintiff's state-law claims under 28 U.S.C. § 1367(a). Although Defendants cite Rule 12(b)(6) in their Motion, Defendants have answered the Complaint. *See* Answer (Doc. No. 5). The Court will therefore consider the Motion under Rule 12(c).

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The Court will "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff[s]." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000). Dismissal on the pleadings is generally appropriate only if "'it appears beyond doubt that [P]laintiff can prove no set of facts in

support of [the] claim[s] which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

## III.   DISCUSSION

Defendants ask the Court to dismiss the Complaint in its entirety, asserting the sovereign immunity of UNMH, the qualified immunity of the individual Defendants, and arguing that Plaintiff's allegations fail to state a claim. Mot. at 2. Plaintiff acknowledges that UNMH is entitled to sovereign immunity from suit based on the self-care provision of the FMLA, § 2612(a)(1)(D). *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 43 (2012). Plaintiff therefore consents to the dismissal of Counts I, II, and III as to Defendant UNMH only. Resp. at 3. Plaintiff also acknowledges that the remedial scheme of the FMLA forecloses a retaliatory discharge claim under § 1983 as pleaded in the Complaint, and Plaintiff agrees that Count VI should be dismissed. Resp. at 16. Accordingly, the Court will dismiss Counts I, II, and III against UNMH and Count VI against all Defendants, and the Court will analyze the parties' arguments only as to Plaintiff's remaining claims.

### A.   FMLA Claims - Counts I, II, & III

The FMLA entitles a qualified employee to take up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." § 2612(a)(1)(D). It is unlawful for any employer to interfere with or retaliate against an employee's exercise or attempted exercise of these rights. § 2615(a). But Defendants Lopez, Duenas, and Hilton argue that they cannot be held individually liable as employers under the FMLA.

The definition of "employer" in the FMLA is substantively identical to that in the Fair

Labor Standards Act (FLSA), 29 U.S.C. § 203(d). An "employer" subject to the FMLA is

defined as follows:

> (A) In general
>> The term "employer"--
>> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>>> (ii) includes--
>>>> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>>>> (II) any successor in interest of an employer;
>>> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>>> (iv) includes the Government Accountability Office and the Library of Congress.
> (B) Public agency
>> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

§ 2611(4).

The plain meaning of § 2611(4)(A)(ii)(I) provides for individual liability. *See Saavedra v.*

*Lowe's Home Centers, Inc.*, 748 F.Supp.2d 1273, 1283 (D.N.M. 2010); *Haybarger v. Lawrence*

*County Adult Probation and Parole*, 667 F.3d 408, 413 (3rd Cir. 2012) ("Section

2611(4)(A)(ii)(I)'s inclusion of 'any person who acts, directly or indirectly, in the interest of an

employer' plainly contemplates that liability for FMLA violations may be imposed upon an

individual person who would not otherwise be regarded as the plaintiff's 'employer.'").

Implementing regulations promulgated under the FMLA further support this view by stating that

"[a]s under the FLSA, individuals such as corporate officers 'acting in the interest of an

employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R.

§ 825.104(d).

The Tenth Circuit has expressly held that an FMLA claim for money damages against a state officer in his individual capacity is not barred by Eleventh Amendment immunity, even where the state was obligated by statute to indemnify the officer. *See Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132–33 (10th Cir. 2001). But in *Cornforth*, because the case was on interlocutory appeal regarding immunity, the Tenth Circuit did not reach the statutory argument of whether the term "employer," as used in the FMLA, should be interpreted to "include individual supervisors." *Id.* at 1135; *see also Gray v. Baker*, 399 F.3d 1241, 1246–47 (10th Cir. 2005) (finding that court lacked interlocutory appellate jurisdiction over issue of whether individual public employees may be liable under FMLA). However, the majority of courts to consider the issue have found that the FMLA allows individuals to be held liable as employers. *See Saavedra*, 748 F.Supp.2d at 1283 (collecting cases).

Nevertheless, the individual Defendants argue that supervisory *public* employees do not fall within § 2611(4)(A)(ii)(I) and therefore that they cannot be held individually liable under the FMLA. There is a split among the circuits on this point. Defendants rely on cases from the Fourth, Sixth, and Eleventh Circuits, which have drawn a distinction between the public and private sectors. While these Courts have acknowledged that the definition of "employer" in the FMLA is similar to that of the FLSA and that the statutory language provides for individual liability, they have concluded that, at least under the FMLA, this extends only to private-sector employees.

The Eleventh Circuit Court of Appeals reached this conclusion based on its past precedent interpreting the term "employer" in the FLSA to exclude a public official acting in his or her individual capacity. *See Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (citing *Welch v. Laney*, 57 F.3d 1004 (11th Cir.1995)). Because of the similarity of the statutory

definitions of "employer," *Wascura* reasoned that the FMLA must be interpreted identically to the FLSA. Therefore the FLSA precedent was controlling and prohibited any individual liability for a public employee under the FMLA. *See id.* But this conclusion is not required in the Tenth Circuit, which has no analogous precedent.

In *Mitchell v. Chapman*, 343 F.3d 811, 828 (6th Cir. 2003), the Sixth Circuit Court of Appeals noted that *Wascura*'s reliance on precedent had made a textual analysis of the FMLA unnecessary. The Sixth Circuit, however, had not previously decided the individual liability of a public employee under either the FLSA or the FMLA. *Id.* at 832 n.27. *Mitchell* therefore looked to the text of the FMLA and concluded that the statute compelled a distinction between public and private employees. *Id.* at 829–32. Despite the similarity of the FMLA to the FLSA, the Sixth Circuit concluded that small textual differences required that they be interpreted differently. It relied primarily on the separation of the individual liability provision, § 2611(4)(A)(ii)(I), and the public agency provision, § 2611(4)(A)(iii), into two distinct clauses. Because the term "employer" is followed by a dash, the Court determined that clauses (i)–(iv) after the dash all modified that term, but that there was no punctuation suggesting an interrelationship between them. Confusingly, it emphasized that clause (ii) was followed by a second dash, which it viewed as creating a relationship between subclauses (ii)(I) and (ii)(II), although this reasoning seems contrary to its argument that the first dash did not link clauses (i)–(iv). The Court also stated that an interpretation that allowed for the individual liability of public agency employees would render § 2611(4)(B) superfluous. Finally, *Mitchell* opined that commingling the public agency and individual liability provisions would restate the language of the FLSA, which would be inconsistent with the rest of the FMLA where parts of the FLSA are directly referred to rather than paraphrased.

*Mitchell* relied heavily on the reasoning of *Keene v. Rinaldi*, 127 F.Supp.2d 770, 776 (M.D.N.C. 2000), a district court case from the Fourth Circuit which analyzed the text of the FMLA and found no individual liability for public employees based on the order of the statutory provisions. Defendants also cite *Keene*, along with *Miller v. County of Rockingham*, 06-0053, 2007 WL 990135 (W.D.Va. Mar. 30, 2007), which in turn relied on *Mitchell*. The Fourth Circuit Court of Appeals has not decided this issue.

However, the Third, Fifth, and Eighth Circuit Courts of Appeal have reached conclusions contrary to that of *Wascura*, *Keene* and *Mitchell*. In *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002), the Eighth Circuit Court of Appeals held that the language of the FMLA "plainly includes persons other than the employer itself" and saw "no reason to distinguish employers in the public sector from those in the private sector." *Mitchell* criticized *Darby* for its lack of in-depth analysis, *see* 343 F.3d at 828, but the Fifth Circuit Court of Appeals agreed with *Darby* after thoroughly examining and rejecting each argument in *Mitchell*. *See Modica v. Taylor*, 465 F.3d 174, 184 (5th Cir. 2006).

The *Modica* Court concluded that the FMLA's use of the word "and" between clauses § 2611(4)(A)(iii) and § 2611(4)(A)(iv) suggests that clauses (i)–(iv) are intended to be linked. *Id.* at 185. It also found that, following *Mitchell*'s own reasoning, the dash after the term "employer" would also indicate an interrelationship between the clauses. *Id.* The Fifth Circuit did not consider this interpretation as rendering § 2611(4)(B) superfluous because it read that section as relieving plaintiffs of the requirement that they prove the agency is engaged in commerce. *Id.* at 185–86. Finally, *Modica* disagreed with *Mitchell*'s theory that Congress would have expressly adopted the FLSA's definition of employer if it had intended the definitions to be identical. *Id.* at 186. Because the definitions are materially identical and the FLSA is mentioned in the

implementing regulations of the FMLA, the Fifth Circuit concluded that the term "employer" should be interpreted the same under both statutes. *Id.* at 186–87. It held that a public employee who "acts, directly or indirectly, in the interest of an employer" may be subject to liability under the FMLA in his or her individual capacity. *Id.* at 184.

In *Hayberger*, the Third Circuit Court of Appeals found the reasoning of *Modica* more persuasive than *Mitchell*. *See* 667 F.3d at 415–17. Additionally, the Third Circuit noted that district courts within its own circuit had already reached the same conclusion. *Id.* at 415. Similarly here, the majority of district courts within the Tenth Circuit that have considered this issue have concluded that the FMLA allows for the individual liability of supervisory public employees. *See Hibben v. Oklahoma ex rel. Dep't of Veterans Affairs*, No. 16-cv-111-TLW, 2017 WL 1239146, at *6 (N.D. Okla. Mar. 31, 2017); *McFadden v. Tulsa Cty. Bd. of Cty. Comm'rs*, No. 15-CV-348-JHP-PJC, 2016 WL 6902182, at *2 (N.D. Okla. Nov. 23, 2016); *Washington-Walker v. Univ. of Okla. Bd. of Regents*, No. CIV-15-1158-M, 2016 WL 1453053, at *3 (W.D. Okla. Apr. 13, 2016); *Kiefner v. Sullivan*, No. 13-CV-714-TCK-FHM, 2014 WL 2197812, at *9–10 (N.D. Okla. May 27, 2014); *Owens v. City of Barnsdall*, No. 13-CV-749-TCK-PJC, 2014 WL 2197798, at *6 (N.D. Okla. May 27, 2014); *Roberts v. LeFlore Cty. Hosp. Auth.*, No. CIV-13-189-KEW, 2014 WL 1270422, at *3–4 (E.D. Okla. Mar. 26, 2014); *Jeffers v. Redlands Cmty. Coll. Bd. of Regents*, No. CIV-11-1237-HE, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012); *but see Arbogast v. Kansas*, No. 13-CV-4007-JAR/KMH, 2014 WL 1304939, at *5–6 (D. Kan. Mar. 31, 2014).

The Court agrees with the reasoning of *Hayberger*, *Modica*, and the majority of district courts within the Tenth Circuit that have considered this issue. The plain language of the FMLA states that an "employer" includes a public agency, which "shall be considered to be a person

engaged in commerce or in an industry or activity affecting commerce[,]" and that it also

includes "any person who acts, directly or indirectly, in the interest of an employer to any of the

employees of such employer[.]" § 2611(4). The implementing regulations state that this section

mirrors the FLSA. 29 C.F.R. § 825.104(d). Nothing in the text of the FMLA suggests that the

word "employer" in the individual liability provision has a different meaning than the statutory

definition of "employer" set forth in the same section to specifically include public agencies. The

Court therefore concludes that the FMLA subjects an employee of a public agency "who acts . . .

in the interest of an employer to any of the employees of such employer" to individual liability

for violations of the statute.

Nevertheless, the individual Defendants maintain that Plaintiff has not sufficiently

pleaded their qualifications as employers. They argue that, to be liable, individuals must have an

organizational role beyond a managerial position. They assert that Plaintiff has failed to plead

that any of them had any responsibilities within UNMH other than those of a supervisor or

manager. Plaintiff contends that Defendants are mischaracterizing the facts of the Complaint and

attempting to unjustifiably narrow the statutory definition.

Individual liability in this circuit through qualification as an "employer" under the FMLA

has been thoroughly reviewed and analyzed by District Judge James Browning. *See Saavedra*,

748 F.Supp.2d at 1283–88, 1291–96. Judge Browning observed that the breadth of the statutory

language "suggests that almost any person who acts in the interest of the employer as to any of

the employees would qualify as an employer." *Id.* at 1291 (internal elipses and quotation marks

omitted). Additionally, the Supreme Court has instructed that the materially identical language in

the FLSA should be construed expansively in keeping with its remedial purpose. *See id.* at 1292

(citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Rutherford Food Corp. v.*

*McComb*, 331 U.S. 722, 730 (1947)). However, when determining whether an individual qualifies as an employer or employee under the FLSA, the Tenth Circuit narrows the statutory definition by applying the economic reality test. *See id.* (citing *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998)). "The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Baker*, 137 F.3d at 1440. But none of these factors is dispositive; the Court must consider the totality of the circumstances. *Id.* at 1441. "Under this test, courts ask whether the alleged employer possessed the power to control the worker in question, with an eye to the economic reality presented by the facts of each case." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (internal brackets and quotation marks omitted).

When applying the economic reality test in the context of individual liability under the FMLA, courts have considered the defendant's control over and involvement in the plaintiff's ability to take FMLA leave and return to work. *See id.* at 423 ("In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer controlled in whole or in part [the] plaintiff's rights under the FMLA." (internal quotation marks omitted)); *Haybarger*, 667 F.3d at 417 ("[A]n individual is subject to FMLA liability when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." (internal quotation marks omitted)); *Pedersen v. Western Petroleum, Inc.*, No. 2:07-CV-997-TS, 2008 WL 977370, at *3 (D. Utah Apr. 9, 2008) ("[T]he test for liability is whether the defendant had the ability to control, in whole or in part, whether

the plaintiff could take a leave of absence and return to the position." (internal quotation marks omitted)).

Additionally, Plaintiff is not required to specifically allege all facts relevant to the individual defendants' authority, especially when the factual record has not yet been developed through discovery. *See Saavedra*, 748 F.Supp.2d at 1294–95. "[T]o survive a motion to dismiss, Plaintiff . . . must simply plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated." *Smith v. Westchester Cty.*, 769 F.Supp.2d 448, 475–76 (S.D.N.Y.2011) (brackets and internal quotation marks omitted). Plaintiff has met that burden.

Specifically regarding Defendant Lopez, the Complaint alleges that Lopez was Plaintiff's supervisor; Plaintiff delivered his FMLA medical certification to Lopez; Lopez filled out UNMH's Notice of Eligibility regarding Plaintiff's FMLA leave and deceptively marked both the "yes" and the "no" boxes as to whether an accommodation was required; Lopez acknowledged that Plaintiff's request to leave work on March 23, 2016 was FMLA-related; Lopez informed Plaintiff that "UNMH" would not allow him to leave work; Lopez intentionally exacerbated Plaintiff's symptoms until Plaintiff left work anyway; Lopez did not respond to messages left for him by Telles on Plaintiff's behalf to explain Plaintiff's need for immediate treatment; and Lopez fabricated Plaintiff's alleged resignation in order to justify an unlawful termination. Compl. ¶¶ 24–37, 43, 57.

Plaintiff makes fewer specific allegations regarding Defendant Duenas, but alleges that she is one of Plaintiff's supervisors and that his absence from work for the purposes of medical treatment was communicated to her by Telles on Plaintiff's behalf and the message was not returned. Compl. ¶¶ 36–37.

Plaintiff alleges that Defendant Hilton is a department manager and Defendant Lopez' supervisor; Hilton knew that Plaintiff had requested FMLA leave; Hilton knew of Telles' phone calls on Plaintiff's behalf and decided not to return the calls; Hilton responded to Telles five days after the first message and informed Telles that she would not discuss any issue related to Plaintiff with Telles; Hilton fabricated Plaintiff's alleged resignation; Hilton sent the letter advising that Plaintiff's employment had ended, which noted that Plaintiff had requested FMLA leave but stated that the request was denied because Plaintiff's FMLA leave had not yet been approved; and Hilton admitted that Plaintiff would not have been separated from his employment if she had known of the severity of Plaintiff's medical condition on March 23, 2016. Compl. ¶¶ 41–44.

Additionally, Plaintiff alleges that all three of the individually-named Defendants were aware that he had asserted his rights under the FMLA, but that they interfered with those rights by denying him leave, intentionally exacerbating his symptoms, failing to return his calls, and fabricating his alleged resignation in order to terminate his employment for the purpose of ridding the UNMH workplace of an employee who sought to assert his FMLA rights. Compl. ¶¶ 49–52, 56–59, 62–67. At this stage, these allegations are sufficient to establish that each of the individual Defendants exercised supervisory authority over Plaintiff and took some part in the alleged violation while acting in the employer's interest.

### 1.  Count I - FMLA Interference

"To establish an FMLA interference claim, 'an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir.

2017) (quoting *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012)). "A deprivation of these rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden shifting analysis does not apply." *DePaula*, 859 F.3d at 978 (internal quotation marks omitted).

Defendants first assert that Plaintiff has not sufficiently established the deprivation of his FMLA right to be free from interference because Plaintiff did not give adequate notice to be entitled to FMLA leave. Mot. at 13. However, Plaintiff has alleged that he described his symptoms to Lopez and that Lopez was aware that the leave was requested under the FMLA. *See* Compl. ¶¶ 27, 30, 32. An employee need not expressly assert rights under the FMLA. 29 C.F.R. § 825.303. Further, Plaintiff alleges that the individually named Defendants were all aware that Plaintiff had asserted his rights under the FMLA. Compl. ¶ 49. "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the *employer must notify the employee* of the employee's eligibility to take FMLA leave within five business days. 29 C.F.R. § 825.303. And Plaintiff's Certification from his health care provider and Notice of Eligibility established that he was entitled to take FMLA leave for his psychiatric conditions and that Lopez was aware of his entitlement. *See* Compl. ¶¶ 24–26. More specific notice is not required. *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001). Additionally, Telles called Defendants after Plaintiff left work to advise them that Plaintiff had sought treatment. Compl. ¶¶ 35–36. Notice may be provided by an employee's surrogate "as soon as practicable under the facts and circumstances of the particular case." § 825.303.

Defendants argue next that Plaintiff has not alleged any adverse action related to Plaintiff's exercise or attempted exercise of FMLA rights. Mot. at 14. Defendants contend that

Lopez denied Plaintiff's request for leave due to a staffing shortage, that Lopez' exacerbation of Plaintiff's symptoms was unrelated to the FMLA request, and that Defendants interpreted Plaintiff's actions in leaving his workplace as a voluntary resignation and processed it as such. Mot. at 14–15. But the dates of Plaintiff's FMLA leave certification extended from February 26, 2016 through February 26, 2017. Compl. ¶ 47. As of March 23, 2016, Plaintiff had over 300 hours of available leave. Compl. ¶ 48. Provided that notice requirements are met and leave is available, time off requested for an FMLA-qualifying reason may not be denied. *See* 29 C.F.R. §§ 825.220, 825.301. Plaintiff alleges that Defendants knew that Plaintiff was entitled to FMLA leave and improperly denied that leave, and then Lopez purposefully exacerbated the symptoms of Plaintiff's anxiety so that Defendants could falsely claim that Plaintiff had resigned in order to terminate Plaintiff's employment because he sought to exercise his FMLA rights. Compl. ¶¶ 29– 33, 51–52. Lopez first stated that Plaintiff would probably be allowed to leave, but then stated that he would not. Compl. ¶¶ 27–28. Although Plaintiff then returned to work, Lopez called Plaintiff into his office to question him and accused him of low productivity despite Plaintiff having met his production goals that day and Plaintiff's advisement to Lopez that his symptoms were worsening. Compl. ¶¶ 29–33. Defendants did not return Telles' phone calls until after they had terminated Plaintiff's employment. Compl. ¶¶ 41–42. Temporal proximity and expressions of anger in response to protected activity may be persuasive evidence in a claim of FMLA interference. *See Sabourin v. Univ. of Utah*, 676 F.3d 950, 960 (10th Cir. 2012). The denial of Plaintiff's leave and termination of his employment when he left his workplace to seek treatment constitute allegations of adverse actions taken by Defendants such that they can be held individually liable unless later factual development reveals that any of them did not personally participate in the alleged violation.

Finally, Defendants claim that qualified immunity shields them from liability. "To overcome a defendant's claim of qualified immunity in the context of a Rule 12(c) motion, a plaintiff's pleadings must establish both that the defendant's actions violated a federal constitutional or statutory right and that the right violated was clearly established at the time of the defendant's actions." *Ramirez*, 222 F.3d at 1240. It is clearly established that the denial of qualifying leave and the termination of employment in relation to an FMLA leave request is a violation of the law. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011); § 825.220 ("Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."). The Court therefore concludes that Plaintiff has adequately alleged the violation of his clearly established FMLA rights and will deny the Motion as to Plaintiff's FMLA interference claim.

### 2. Counts II & III - FMLA Retaliation

An FMLA retaliation claim is subject to a different analysis than the claim of interference. *See Dewitt v. Southwestern Bell Telephone Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) ("[R]etaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas*." (internal quotation marks omitted)). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation, by proving that (1) [he] engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* (internal quotation marks omitted). "Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the

ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.* at 1319 (quotation marks omitted).

Alternatively, a plaintiff may proceed under a mixed motives theory and provide direct evidence of retaliation, although the Tenth Circuit Court of Appeals has questioned whether this approach is applicable in an FMLA retaliation claim. *See Twigg*, 659 F.3d at 1004. "[A] plaintiff proceeding under the direct/mixed motives approach must present direct or circumstantial evidence that directly shows that retaliation played a motivating part in the employment decision at issue. In the FMLA context, the retaliatory animus must relate to the employee's FMLA-protected activities, including, *inter alia*, the taking of FMLA leave." *Id.* at 1004–05 (internal citation and quotation marks omitted). Because Plaintiff relies on the same series of factual events in support of both theories, the Court will address them together.

Plaintiff asserts that his submission of FMLA paperwork and his request and decision to leave work on March 23, 2016 for his FMLA-qualifying condition were protected activities, and that Defendants acted adversely by denying his leave request, intentionally aggravating his FMLA-related medical condition, ignoring his attempts to update them as to his treatment, and separating him from his employment. Compl. ¶¶ 55–56, 62–63. He contends that the temporal proximity of Defendants' actions to his protected activities demonstrates a causal connection and retaliatory animus. Compl. ¶¶ 57–59, 64–65. Defendants denied Plaintiff's request for leave when Lopez knew that Plaintiff was experiencing symptoms of distress from an FMLA-related condition, then Lopez called Plaintiff into his office and, according to Plaintiff, unjustifiably confronted Plaintiff about his work performance until Plaintiff's symptoms became so severe he rushed out of the office to find treatment. Defendants then ignored Plaintiff's attempts to communicate his status through Telles, and instead separated Plaintiff from his employment as of

the date of his requested leave. The Tenth Circuit has "repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to justify an inference of retaliatory motive." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). The Court concludes that Plaintiff has met his burden to present a prima facie case of retaliation.

Defendants argue that Plaintiff's retaliation claims are barred as a matter of law because Plaintiff did not take FMLA leave, but instead left the premises of his employment without permission, which Defendants interpreted as Plaintiff's voluntary resignation from his position. Mot. at 8. However, Defendants misread *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287–88 (10th Cir. 2007), when they state that an FMLA retaliation claim applies only when a plaintiff has successfully taken FMLA leave and is retaliated against after returning to work. In *Campbell*, the Tenth Circuit Court of Appeals described an FMLA interference claim as applying when an employee is prevented from taking leave or denied reinstatement following leave. *Id.* at 1287. The Tenth Circuit then remarked that, "In contrast, a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Id.* at 1287–88. This statement was made in the context of limitations on an interference theory, not in setting out requirements for a retaliation claim, and Defendants mischaracterize this as *Campbell*'s holding. Instead, *Campbell* specifically "h[e]ld that when the employer cites only factors predating the employee's return to work to justify the adverse action, the claim may be brought under either a retaliation or interference theory." *Id.* at 1284. Plaintiff's departure from work on March 23, 2016, was the protected exercise of his rights under the FMLA and a retaliation claim is therefore appropriate.

Defendants further deny that they terminated Plaintiff's employment and claim that they simply accepted his voluntary resignation and declined to communicate with Plaintiff or with Telles while they were processing his alleged resignation. However, Plaintiff has presented evidence that demonstrates that this explanation is pretextual. The facts as alleged by Plaintiff make clear that Plaintiff did not voluntarily resign from his employment and that the circumstances of Plaintiff's departure and the communications from Telles on Plaintiff's behalf should have made it clear to Defendants that Plaintiff needed to take FMLA leave, which Defendants were required to allow him to do, and that Plaintiff intended to return to work after his FMLA leave. Defendants do not deny that they were aware that Plaintiff had requested FMLA leave or that Plaintiff's "resignation" was processed due to his departure from work on March 23, 2016, to seek treatment for his FMLA-qualifying condition. It is clearly established that a termination of employment in response to the exercise of FMLA rights is a violation of the law. *See Twigg*, 659 F.3d at 1006. The Court will therefore deny the Motion as to Plaintiff's FMLA retaliation claims.

## B.    Violation of Due Process – Count IV

Plaintiff brings his fourth claim under 42 U.S.C. § 1983 and labels it "Interest In Continued Employment." Plaintiff asserts that Defendants deprived him of his constitutionally protected property interest by terminating his employment without just cause in violation of their own policies and procedures. Compl. ¶¶ 69–78. As set forth in the Complaint this claim is not a model of clarity, but the Court will interpret it as alleging a procedural due process violation because it is based on the unlawful deprivation of a protected property interest.

"The essence of procedural due process is the provision to the affected party of *some* kind of notice and . . . *some* kind of hearing." *Onyx Properties LLC v. Bd. of Cty. Comm'rs of Elbert*

*Cty.*, 838 F.3d 1039, 1044 (10th Cir. 2016) (internal quotation marks omitted). The Complaint does not detail the process, if any, that Plaintiff received before or after the termination of his employment, nor does it describe the process Plaintiff believes he should have received. Instead, Plaintiff relies on Defendants' alleged failure to comply with the "just cause" requirement and other unidentified policies and procedures. The Court notes that the failure to follow contractual policies and procedures does not necessarily constitute a violation of federal due process. *See id.* However, the facts as alleged in the Complaint suggest that Plaintiff had a protected interest in his employment and that his employment was terminated without any prior notice or hearing.

Defendants base their motion to dismiss this claim primarily on their theory that Plaintiff voluntarily resigned from his position. They argue that their actions in denying Plaintiff's request for FMLA leave did not rise to the level of a constructive discharge. But because Plaintiff did not resign from his employment and has not relied on a theory of constructive discharge, the Court will not dismiss Plaintiff's claim on that ground.

Defendants also argue that the Complaint fails to state a claim because Plaintiff does not allege that his actions in leaving his workplace did not constitute just cause for the Defendants to terminate Plaintiff's employment. The individual Defendants contend that they are therefore entitled to qualified immunity because Plaintiff has not established that their conduct violated his constitutional right. But Plaintiff has alleged that Defendants neither possessed nor articulated just cause for his dismissal. Further, even if just cause did exist, where Plaintiff possesses a protected interest in his position he must still be afforded an opportunity to respond before his employment is terminated. It is clearly established that the deprivation of a protected interest in employment without sufficient process is a constitutional violation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("[Due Process] requires some kind of a hearing prior to

the discharge of an employee who has a constitutionally protected property interest in his employment. As we pointed out last Term, this rule has been settled for some time now." (internal citations and quotation marks omitted)). Consequently, the Court will deny the Motion as to the due process claim.

### C. Breach of Implied Contract of Employment – Count V

Plaintiff claims that Defendant UNMH also violated New Mexico state law by breaching its implied contract of employment with Plaintiff through its failure to follow "a number of policies and procedures related to FMLA leave, discipline, resignation, and termination." Compl. ¶ 87. Specifically, Plaintiff alleges that his employment could only be permissibly terminated for "just cause," but that UNMH breached this agreement by dismissing him without possessing or articulating any acceptable reason. Compl. ¶¶ 70, 73–75.

New Mexico presumes employment without a definite term to be at will. *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 22, 131 N.M. 607, 41 P.3d 333. However, the at-will employment relationship may be modified by a contractual agreement regarding termination. *Id.* A representation in an employee handbook or personnel policies may limit the employer's authority to discharge if it is sufficiently explicit to create a reasonable expectation of an implied contract. *Id.*

Defendants ask the Court to dismiss this claim based on Plaintiff's alleged failure to exhaust administrative procedures prior to resigning on March 23, 2016. However, as noted previously, Plaintiff alleges that he did not resign, but was unlawfully terminated from his employment. While Defendants assert that "[i]t is not uncommon" for certain administrative procedures to be required even when an employee has been discharged, they do not contend that UNMH had such requirements or that Plaintiff failed to fulfill them. Further, the failure to

exhaust is an affirmative defense that does not implicate the legal sufficiency of the Complaint because the exhaustion of administrative remedies is not an element of the cause of action. *See* UJI 13-2302 NMRA; UJI 13-2303 NMRA.

Defendants also argue that Plaintiff has not alleged any specific conduct constituting a breach of contract and has not described the policies or procedures alleged to have been violated by Defendants. Again the Court acknowledges that the Complaint is unclear. Defendants accurately point out that Count V does not provide the necessary factual detail to demonstrate a breach of contract. But this information can be found in the Complaint under Count IV, which alleges that UNMH could only discipline Plaintiff or terminate his employment for cause but that it nevertheless decided to fire him when it did not possess any just cause to do so. Compl. ¶¶ 70–75. These allegations are incorporated in Count V by reference, *see* Compl. ¶ 79, and when taken as true they are sufficient to state a claim. The Court will therefore deny the Motion as to Plaintiff's claimed breach of implied contract.

### D.    Wrongful Termination – Count VII

Plaintiff's claim for wrongful termination, like his breach of contract claim, alleges that Defendant UNMH failed to comply with its employment policies when it terminated Plaintiff's employment without just cause. Defendants argue that Plaintiff has failed to state a claim for relief under this theory because the tort of wrongful discharge applies only to at-will employees not protected by an employment contract. Plaintiff asserts that New Mexico allows an employee to plead both wrongful termination and breach of contract as alternative theories of recovery.

New Mexico recognizes a cause of action in tort when an employee is discharged due to the employer's violation of a clear public policy. *Silva v. Am. Fed'n of State, Cty. & Mun. Emps.*, 2001-NMSC-038, ¶ 11, 131 N.M. 364, 37 P.3d 81. Like a breach of implied contract, this claim

is an exception to the general rule of at-will employment. *Id.* ¶ 12. "[I]t is unnecessary and inapplicable when the employee is protected from wrongful discharge by an employment contract." *Id.* As such, it is "limited to those cases in which the employee can be fired without just cause." *Id.* ¶ 16. However, "the mere existence of an alternative remedy [does not] render[] the tort of [wrongful] discharge unavailable." *Id.* "[A] plaintiff may proceed to a jury with alternative and mutually exclusive theories. In such circumstances, the trial court should instruct the jury [that it] may find a breach of contract or a [wrongful] discharge, but not both." *Id.* ¶ 17; *see also Boudar v. E.G. & G., Inc.*, 1987-NMSC-077, ¶ 16, 106 N.M. 279, 742 P.2d 491 (Plaintiff may allege and present evidence on both tort theory of wrongful discharge and contract theory of breach of implied contract). The Court will not dismiss Plaintiff's wrongful termination claim at this stage merely because he also alleges breach of contract.

However, Defendants assert that Plaintiff has failed to state a claim for wrongful termination because he alleges only breach of contract and does not allege that he was an at-will employee. At-will status is not an element that must be pleaded. While proof that an employee was protected by a contract will bar the claim, the existence of a contract is an issue of fact and at-will status is presumed unless the contract is established. *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶¶ 4, 6, 115 N.M. 665, 857 P.2d 776. An employee attempting to prevail on a claim of wrongful discharge must show that he or she was discharged for performing acts that public policy has authorized or would encourage, or for refusing to do something required by an employer that public policy would condemn. *See Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶ 15, 121 N.M. 710, 917 P.2d 1382. There must be a causal connection between the employee's actions and the subsequent discharge. *Id.*

Plaintiff does rely only on the breach of contract allegations under Count VII, and does not plead the required elements in support of his claim. However, Plaintiff alleges under Count VI, his § 1983 claim for retaliatory discharge, that his employment was terminated in violation of public policy because of his attempts to assert his rights under the FMLA. *See* Compl. ¶¶ 93–95. These allegations are incorporated by reference under Count VII, *see* Compl. ¶ 99, and will meet the pleading requirements for wrongful discharge. Plaintiff consented to the dismissal of Count VI because it relies solely on Defendants' alleged violations of the FMLA, and he admits that an action under § 1983 is precluded by the comprehensive remedial scheme of the FMLA. But Defendants do not argue that a state-law retaliatory discharge claim is also precluded for that reason.

Some federal district courts have concluded that a tort claim of wrongful discharge under New Mexico law cannot exist when another cause of action provides redress. *See Depaula v. Easter Seals, El Mirador*, No. 1:14-cv-00252-MCA-SCY, 2016 WL 6681182, *9 (D.N.M. Mar. 31, 2016) (wrongful discharge claim cannot be premised on alleged violation of the FMLA); *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1408 (D.N.M.1986) ("[w]here a remedy other than this tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action.").

However, the Court does not agree with this interpretation of New Mexico law. New Mexico first recognized a claim for wrongful discharge in *Vigil v. Arzola*, 1983-NMCA-082, ¶ 23, 102 N.M. 682, 699 P.2d 613, *rev'd in part on other grounds*, 1984-NMSC-090, ¶ 9, 101 N.M. 687, 687 P.2d 1038, *overruled in part by Chavez v. Manville Prods. Corp.*, 1989-NMSC-

050, ¶ 26, 108 N.M. 643, 777 P.2d 371. When concluding that a claim for wrongful discharge could not be based on an alleged violation of Title VII, *Salazar* explained that:

> Some of the dicta in *Vigil* may appear contrary to this conclusion. *Vigil* noted several categories of identifiable public policy. One category consists of "legislation which not only defines public policy, but also provides a remedy." The New Mexico Human Rights Act, it noted, falls within this category. Nevertheless, the facts before the *Vigil* court did not require a decision as to whether a cognizable employment discrimination claim would state a cause of action for wrongful discharge. The reasoning behind *Vigil* and the court's apparent desire to make only a limited exception to the termination at will rule convince this Court that wrongful discharge does not extend to cases for which another remedy is provided by law.

*Salazar*, 629 F.Supp. at 1408 (internal citations omitted). Other cases have since relied on *Salazar*. *See, e.g.*, *McDonald v. Corr. Corp. of Am.*, 181 F.Supp.2d 1274, 1282–83 (D.N.M. 2002); *Parker v. John Q. Hammons Hotels*, 914 F.Supp. 467, 472 (D.N.M. 1994). But *Salazar*'s view of New Mexico law has been called into question.

In *Shovelin v. Central N.M. Elec. Coop.*, 1993-NMSC-015, ¶ 25, 115 N.M. 293, 850 P.2d 996, the New Mexico Supreme Court cited *Vigil* when it described one of the categories of "clear mandate[s] of public policy sufficient to support a claim of retaliatory discharge" as "legislation [that] define[s] public policy and provide[s] a remedy for a violation of that policy." The New Mexico Supreme Court later specifically rejected the "argument that the tort of retaliatory discharge cannot be founded on a declaration of public policy embodied in a legislative enactment that provides its own remedial scheme." *Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, ¶¶ 10–12, 117 N.M. 441, 872 P.2d 859. While it agreed that the plaintiff could not recover twice for the same harm, it noted that a tort claim might provide different remedies than those available under the statutory scheme and that the argument for preclusion contradicted both *Vigil* and *Shovelin*. *Id.* ¶¶ 8, 10. It explained that judicial procedures could prevent a double recovery and held that a violation of the New Mexico Human Rights Act (NMHRA) supports a

claim for discharge in violation of public policy despite the statutory remedy. *Id.* ¶ 12. In

*Michaels v. Anglo American Auto Auctions, Inc.*, 1994-NMSC-015, ¶¶ 15–17, 117 N.M. 91, 869

P.2d 279, the Court similarly allowed a retaliatory discharge claim to be based on violation of the

Worker's Compensation Act.

This Court has previously relied on *Gandy* when allowing a common-law claim for

wrongful discharge based on violation of the NMHRA to go forward. *See Davis v. Gardner

Turfgrass, Inc.*, No. 15 CV 743 JAP/WPL, 2016 WL 5172820, *13 (D.N.M. July 29, 2016). And

a wrongful discharge claim based on alleged violations of the FMLA survived summary

judgment in *Miera v. Martin*, No. 14-CV-306 GBW/KK, 2015 WL 12659915, *10-*11 (D.N.M.

June 1, 2015). Further, Defendants have not argued that this claim cannot be based on Plaintiff's

allegations that their actions violated the FMLA, so the Court will not dismiss the claim on that

basis.

IT IS THEREFORE ORDERED that:

(1) DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS ALL COUNTS OF THE

COMPLAINT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF (Doc.

No. 29) is GRANTED as to Counts I, II, & III against Defendant UNMH and as to Count

VI as to all Defendants;

(2) In all other respects the Motion is DENIED.

_____

SENIOR UNITED STATES DISTRICT JUDGE